IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Douglas Hall, | C/A No.: 1:10-3173-MBS-SVH |
| Plaintiff, | |
| vs. | |
| | REPORT AND RECOMMENDATION |
| Linda Mitchell, | |
| Defendant. | |

Plaintiff, proceeding pro se and in forma pauperis, was a pretrial detainee incarcerated at Union County Detention Center ("UCDC") at the time he filed this civil rights action, which is construed as brought pursuant to 42 U.S.C. § 1983. Before the court is Defendant's Motion for Summary Judgment [Entry #49]. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.), the undersigned is authorized to review such complaints for relief. Because the motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff alleges that on August 19, 2010, he went to Urgent Medical Care in Union, South Carolina for pain in his hip, stomach, side, and back because of a bone spur on his hip joint. Compl. at 3 [Entry #1]. Further Plaintiff alleges another detainee, David Sumner, went to Urgent Medical Care the same day. *Id.* Dr. Miller allegedly prescribed Plaintiff Tramadol for pain and a medication for inflamation. *Id.* Plaintiff alleges that between August 20, 2010 and about August 28, 2010, he was given Sumner's medicine

by jail employees instead of his medicine without his knowledge. *Id.* at 3–4. Sumner's medicine was allegedly for anxiety. *Id.* at 3. The jail employees allegedly discovered the mistaken medicine swap because of Sumner's questioning. *Id.* at 3–4. According to Defendant and undisputed by Plaintiff, after an investigation into the medication swap, it was determined that Wal-Mart pharmacy had mislabeled the medication. Aff. Mitchell ¶ 5 [Entry #49-3]. Plaintiff alleges that, as a result of his ingesting the wrong medicine, he had nightmares, stress, headaches, irregular bowel movements, and could not sleep. Compl. at 4 [Entry #1]. Plaintiff also alleges he has become an angry man and fears that he might hurt himself, jail staff, or another detainee. *Id.* Plaintiff has sought to see "Mental Health." *Id.* According to his complaint, Plaintiff was interviewed by a mental health counselor during the last week of October 2010 and was informed that he would see a mental health doctor every two weeks. *Id.* However, Plaintiff alleges that he has not yet seen a mental health doctor. *Id.*

Defendant filed her motion for summary judgment on July 19, 2011. [Entry #49]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendant's motion. [Entry #50]. Plaintiff filed a timely response in opposition to Defendant's motion. [Entry #54]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendant's motion for summary judgment.

II.     Discussion

   A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a

potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Supervisory Liability

Defendant contends that to the extent Plaintiff is suing her for his being given another inmate's medication instead of his own, Plaintiff failed to make any actual allegations against her and she cannot be held liable on a theory of *respondeat superior* or vicarious liability. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant was personally responsible for the mistake related to Plaintiff's medication or acted in any way other than a supervisory role. Further,

Plaintiff has not shown that Defendant was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of UCDC employees related to the disbursement of Plaintiff's medication. Thus, to the extent he sues Defendant for the mistakes related to his medication, Plaintiff fails to show that Defendant is liable on a theory of *respondeat superior* or supervisory liability, and the claims against Defendant must be dismissed.

2.     Failure to Provide Medical Care

Plaintiff alleges that he wrote grievances to the Administrator, which is Defendant's title, regarding scheduling him to see a doctor, but none was answered. [Entry #1 at 4.] Therefore, it appears Plaintiff is alleging that Defendant denied him medical care.

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain,"proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986).

Here, Plaintiff has not established a constitutional claim for denial of medical care. By Plaintiff's own admission he saw a mental health counselor on November 2, 2010. [Entry #54 at 2]. Plaintiff alleges he was supposed to see mental health every two weeks. *Id*. at 3. Although it is undisputed that Plaintiff did not see mental health again until December 9, 2010, there is no indication from the December 9, 2010 medical records that further follow-up treatment was ordered. *See* Medical Records from December 9, 2010 [Entry #49-3 at 5]. Given the particular facts of this case, there is no indication that the failure to provide treatment between November 2, 2010 and December 9, 2010 constitutes deliberate indifference to Plaintiff's serious medical needs, especially in light of the absence of orders for further treatment. Therefore, it is recommended that Defendant be granted summary judgment.

IV.     Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment [Entry #49] be granted and this case be dismissed in its entirety.[1]

IT IS SO RECOMMENDED.

October 17, 2011                                          Shiva V. Hodges
Florence, South Carolina                          United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[1] If the district judge accepts this recommendation, Plaintiff's motion requesting discovery [Entry #37], which was filed after the discovery period had closed, will be moot.